IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AIRIA BROWNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-18-D |
| ) | |
| MHM SUPPORT SERVICES, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 40]. Plaintiff, Airia Browning, filed a response [Doc. No. 44], to which Defendant replied [Doc. No. 45]. The matter is fully briefed and at issue.

**PROCEDURAL BACKGROUND**

Plaintiff was employed by Defendant, MHM Support Services (MHM), as a Medical Assistant I from approximately November 2021 until June 2023. Plaintiff filed suit against Defendant in Oklahoma County state court on November 13, 2023 [Doc. No. 1-1], and the case was removed to this Court on January 8, 2024 [Doc. No. 1]. Defendant seeks summary judgment in its favor with respect to Plaintiff's claims of discrimination based on race under Title VII, violation of the Oklahoma Anti-Discrimination Act (OADA), retaliation, and hostile working environment.

**UNDISPUTED MATERIAL FACTS**

In November 2021, Plaintiff began his employment with MHM at a primary care clinic as a Medical Assistant I [Doc. No. 40, Def.'s UMF No. 1]. Plaintiff reported to his

1

supervisor, Zach Green, until Mr. Green's departure in early 2022. *Id.* at Def.'s UMF Nos. 4, 5. Plaintiff continued to work for MHM but was transferred to another location—the Edmond I-35 location—in August 2022. *Id.* at Def.'s UMF No. 6.

Lauren Gierat was Plaintiff's supervisor at the Edmond I-35 location until she departed from MHM on March 27, 2023, due to issues related to pay and her control over certain decisions. *Id.* at Def.'s UMF No. 7. During the time Plaintiff and Ms. Gierat worked together, they had a conversation about a possible pay raise for Plaintiff, but this never came to fruition. *Id.* at Def.'s UMF No. 9.

After Ms. Gierat left, Mr. Green began his employment at the Edmond I-35 location. *Id.* at Def.'s UMF No. 8. Plaintiff and Mr. Green worked together at this location for approximately two-and-a-half months, and, at some point during this time period, they also had a conversation about a possible raise and promotion for Plaintiff. *Id.* at Def.'s UMF Nos. 10, 16. While they worked together, the two consistently exchanged text messages. *Id.* at Def.'s UMF No. 17. In support of his claims, Plaintiff points to three specific, alleged comments that Mr. Green made to him. *Id.* at Def.'s UMF No. 20. But Plaintiff alleges that he experienced continuous harassment from Mr. Green throughout their time working together [Doc. No. 44, Pl.'s UMF No. 10].

Jacquayla McGlothin was also a coworker of Plaintiff's at the Edmond I-35 location [Doc. No. 40, Def.'s UMF No. 23]. Plaintiff alleges that Ms. McGlothin made several advances towards him, and when he did not reciprocate, she pulled him aside and asked if he was gay. *Id.* at Def.'s UMF No. 24. Further, Plaintiff alleges that Ms. McGlothin sent him a text message about having sex on May 31, 2023. *Id.* After Plaintiff rejected Ms.

McGlothin's advances, they went back to being "cordial" coworkers. *Id.* at Def.'s UMF No. 25.

Plaintiff was denied a raise in early May 2023, and was told that it was because he did not have a valid certification for a promotion from Medical Assistant I to Medical Assistant II. *Id.* at Def.'s UMF No. 26. On June 21, 2023, Plaintiff sent a text message to Mr. Green containing a draft of a resignation letter that he planned to submit at a later time. *Id.* at Def.'s UMF No. 27. Mr. Green stated that MHM would accept that as his resignation and he did not need to return to work [Doc. No. 44, Pl.'s UMF No. 18]. Plaintiff then immediately attempted to reverse the impact of the letter [Doc. No. 40, Def.'s UMF No. 28].

During his employment with MHM, Plaintiff performed his duties satisfactorily [Doc. No. 44, Pl.'s UMF No. 1]. He was also the only African American employee and the only male employee in his position at both MHM locations. *Id.* at Pl.'s UMF No. 2.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

## DISCUSSION

I. **Plaintiff's allegations predating October 14, 2022, may be used only in assessing his hostile work environment claim.**

"Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). "Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct." *Duncan v. Manager, Dep't of Safety, City*

*& Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000(e)-5(e)(1)). "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Id.* (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004)).

"[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2004)). "[T]he Supreme Court has generally rejected the continuing violation theory—a theory under which a plaintiff's belated EEOC charge is timely with respect to discrete incidents of discrimination or retaliation that occur more than 300 days before the charge on the ground that several discrete incidents are all part of a continual pattern of discrimination." *Id.* (citing *Morgan*, 536 U.S. at 110). "But hostile work environment claims are different." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016).

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 115 (citing 42 U.S.C. § 2000e-5(e)(1)). An unlawful employment practice does not take place on one specific day. *Hansen*, 844 F.3d at 923. "Rather, it takes place over time, 'and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Id.* (quoting *Morgan*, 536 U.S. at 115). Therefore, "it does not matter that some of the component acts fall outside the statutory time period." *Morgan*, 536 U.S. at 103. As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining

5

liability." *Id.* "[A] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.*

In determining whether the acts are part of the same hostile work environment practice, the Tenth Circuit has recognized several, non-exclusive factors. *Hansen*, 844 F.3d at 923. One factor the Circuit has considered is "whether the pre- and post-limitations period acts were 'related by type, frequency, and perpetrator.'" *Id.* (quoting *Duncan*, 397 F.3d at 1309). Another factor to be considered is "whether the acts occurred when the employee 'was working in the same place.'" *Id.* (quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008)).

Plaintiff filed his EEOC charge on August 10, 2023; 300 days prior to that was October 14, 2022. Defendant asserts that any allegations against it made by Plaintiff predating October 14, 2022, are time-barred because Plaintiff failed to exhaust them before the EEOC. Plaintiff does not dispute the dates set forth above, but does assert that any allegations that occurred prior to October 14, 2022, can be used to assess whether a hostile work environment was present.

Specifically, Defendant argues that Paragraphs 9-11 in Plaintiff's amended complaint are time-barred. These Paragraphs allege sexual harassment claims against two of Plaintiff's coworkers stemming back to early 2022. The majority of Plaintiff's claims in this case are against these two coworkers while they all worked at MHM. Clearly, these acts "are part of the same actionable hostile work environment practice." *Morgan*, 536 U.S. at 103. Accordingly, the Court agrees with Plaintiff that allegations predating October 14,

2022, may be used to analyze his hostile work environment claim, but not in assessing Plaintiff's claims of racial discrimination and retaliation.

## II. Defendant is entitled to summary judgment on Plaintiff's retaliation and discrimination claims.

### A. The Court applies the *McDonnell Douglas* burden-shifting framework.

As a threshold issue, Plaintiff argues that the Court should not apply the *McDonnell Douglas* burden-shifting framework to Plaintiff's retaliation and discrimination claims, because "many courts[] . . . are questioning the use of the framework and finding that it has been misapplied" [Doc. No. 44, at 15]. Plaintiff advocates for the use of the standard Rule 56 summary judgment analysis here. The Tenth Circuit has repeatedly upheld the use of the *McDonnell Douglas* framework. *See Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072 (10th Cir. 2023) (affirming the district court's grant of summary judgment using the *McDonnell Douglas* framework). The Court rejects Plaintiff's argument and will apply the *McDonnell Douglas* framework to both Plaintiff's racial discrimination claim and retaliation claim.

The *McDonnell Douglas* framework involves three steps:

> (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.

*Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citing *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) *abrogated on other grounds by*, *Lincoln v. BNSF Ry. Comp.*, 900 F.3d 1166 (10th Cir. 2018)).

7

### B. Plaintiff's Title VII racial discrimination claim and claim under the OADA fail as a matter of law.

"To establish a prima facie case of Title VII discrimination, a plaintiff who is a member of a protected class must show that she experienced an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1334 (10th Cir. 2025) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). "An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Defendant asserts that Plaintiff cannot establish a prima facie case because he cannot show an adverse employment action. Further, Defendant argues that even if Plaintiff can establish a prima facie case, Plaintiff did not meet the requirements for a raise and promotion from Medical Assistant I to Medical Assistant II which is a nondiscriminatory reason for the adverse employment action.

The Court assumes, without deciding, that Plaintiff has satisfied his prima facie burden for his Title VII discrimination claim. It does so because even if Plaintiff has established a prima facie case under Title VII, he has failed to identify evidence that Defendant's reason for its employment action was a pretext for discrimination. *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1317 n.10 (10th Cir. 2017) ("[The Tenth Circuit has]

previously affirmed a grant of summary judgment on the basis of failure to show pretext after assuming without deciding that an employee has stated a prima facie case.").

Because the Court assumes that Plaintiff has satisfied his prima facie burden for his racial discrimination claim, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for its employment decision. *See MacKenzie*, 414 F.3d at 1274.

Defendant asserts that Plaintiff's lack of proper certification for promotion from Medical Assistant I to Medical Assistant II was the reason for its decision. Plaintiff claims that he was eligible for the promotion, but Defendant asserts that Plaintiff did not have the requisite certification. The Court finds Defendant's proffered reason to be legitimate and nondiscriminatory. Thus, the burden shifts back to Plaintiff to show that Defendant's reason is pretextual. *See MacKenzie*, 414 F.3d at 1274.

"A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted). In determining pretext, it is not for the Court to decide whether Defendant's reasons for its decision were "wise, fair, or even correct," so long as they were truly the reasons for the decision. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1083 (10th Cir. 1999) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). The Court's role is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Kendrick*, 220

F.3d at 1233 (quotation and citation omitted). "[A] challenge of pretext requires [courts] to look at the facts as they appear to the person making the decision to terminate [a] plaintiff." *Id.* at 1231. "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson*, 181 F.3d at 1179 (citing *Morgan*, 108 F.3d at 1323).

Plaintiff's argument regarding pretext is limited to: (1) a conclusory statement that "[t]he reasons given by Defendant for firing Plaintiff are a pretext for the discrimination and retaliation for complaining of the discrimination" [Doc. No. 44, at 26]; (2) a definition of the word "pretext" from the Tenth Circuit; and (3) a contention that "the self-serving declaration of Zachary Green (Def.'s Ex. 4) should be given no weight" [Doc. No. 44, at 26-27]. Viewing these assertions in the light most favorable to Plaintiff, Plaintiff still fails to show pretext.

The Tenth Circuit has made clear that "mere conjecture" that a defendant's reasons for its decision are pretextual is insufficient to defeat summary judgment. *See Anderson*, 181 F.3d 1171. The court of appeals has explained that a plaintiff may establish pretext by pointing to a weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's reason. Plaintiff fails to do so. Here, Plaintiff does not even mention what Defendant's proffered reason was, much less attempt to argue that the employment decision was pretextual. Rather, Plaintiff attempts to argue pretext by solely using conclusory statements that do not rise past mere conjecture.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's racial discrimination claim.[1]

### C. Plaintiff's retaliation claim fails as a matter of law.

"To state a prima facie case of retaliation, [Plaintiff] must demonstrate that: (1) [he] engaged in protected opposition to discrimination; (2) [Defendant] took an adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) (citing *Jones v. Barnhart*, 349 F.3d 1260, 1269 (10th Cir. 2003); *Kendrick*, 220 F.3d 1220).

Defendant asserts that Plaintiff cannot establish a claim of retaliation because there is no evidence that Plaintiff ever complained to anyone about the alleged harassment or discrimination, he resigned his employment, and there is no activity by MHM that would have dissuaded a reasonable worker from making a complaint. Plaintiff's only response to Defendant's argument is that Plaintiff engaged in protected activity by complaining to Mr. Green's supervisor several times. But in this portion of his argument, he proceeds by discussing his hostile work environment claim rather than retaliation. Plaintiff wholly fails

---

[1] Defendant also moves for summary judgment on Plaintiff's claim under the OADA. "This Court has held that 'claims under the OADA are evaluated using the same standards as claims under Title VII, and a claim that fails under Title VII will also fail under the OADA.'" *Bacy v. Chickasaw Nation Indus., Inc.*, No. CIV-19-512-G, 2020 WL 2225365, at *8 (W.D. Okla. May 7, 2020) (quoting *Cunninham v. Skilled Trade Servs., Inc.*, No. CIV-15-803-D, 2015 WL 6442826, at *3 (W.D. Okla. Oct. 23, 2015)). For the same reasons stated above, Defendant is entitled to summary judgment on this claim.

to effectively respond to Defendant's motion for summary judgment on the retaliation claim.

Similar to Plaintiff's racial discrimination claim, the Court assumes, without deciding, that Plaintiff has satisfied his prima facie burden for his retaliation claim. Because the Court assumes that Plaintiff has satisfied his prima facie burden for his retaliation claim, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for its employment decision. *See MacKenzie*, 414 F.3d at 1274.

Defendant asserts that the reason for its decision was that Plaintiff did not meet the requirements for promotion from Medical Assistant I to Medical Assistant II. Additionally, Mr. Green did not have the ability or authority to provide Plaintiff with a raise and a promotion. Like Plaintiff's racial discrimination claim, the Court finds Defendant's proffered reason to be legitimate and nondiscriminatory. Thus, the burden shifts back to Plaintiff to show that Defendant's reason is pretextual. *See MacKenzie*, 414 F.3d at 1274.

Plaintiff addresses pretext for his racial discrimination and retaliation claims together. For the same reasons as stated above, Plaintiff fails to establish pretext here. Rather than point to a specific reason Defendant's employment decision constitutes pretext, Plaintiff asserts conclusory statements. The Tenth Circuit has explicitly stated such mere conjecture is insufficient to establish pretext. *See Anderson*, 181 F.3d 1171.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## III. Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claim.

"For a hostile environment claim to survive a summary judgment motion, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (quoting *Davis v. U.S. Postal Servs.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

Defendant contends that Plaintiff's hostile work environment claim fails because he can only point to several comments made by Ms. McGlothin, and their relationship became "cordial" after Plaintiff confronted her about these comments. Further, Defendant claims that Plaintiff can only point to three comments made by Mr. Green to Plaintiff, and a review of the text messages shows that the comments were not harassing. In response, Plaintiff points out that the Court is to look at the cumulative effect of the individuals' conduct toward Plaintiff.

"[T]he severity and pervasiveness evaluation [of a hostile work environment claim] is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012) (citation omitted). Further, "[t]he dispositive question is whether there was sufficient evidence of pervasiveness on this record such that the district court should have given a jury 'the opportunity to evaluate the evidence, demeanor, and candor of witnesses' and make the ultimate determination." *Id.* (citing *Tademy*, 614 F.3d at 1146).

13

Plaintiff asserts that this harassment began nearly as soon as he started his employment with MHM and would occur at least multiple times each week [Doc. No. 44-1, at 113-14]. It is undisputed that there are three specific comments that Plaintiff can remember Mr. Green making to him: "a verbal comment about oral sex after Plaintiff had a tonsillectomy," "a text message wherein Green told Plaintiff that Plaintiff would have sex with Green if Green was dressed in drag," and "a verbal comment by Green asking what Plaintiff was 'willing to do for it' in response to Plaintiff asking for a raise" [Doc. No. 40, Def.'s UMF No. 21].

However, Plaintiff testifies at length in his deposition as to the extent of the harassment. For example, he estimates that Mr. Green made several hundred comments on his skin tone and approximately fifty comments regarding the size of his penis [Doc. No. 44-1, at 122-23]. Specifically, he alleges that Mr. Green told Plaintiff he needed to get larger scrub pants, insinuating that he could see the outline of Plaintiff's penis in his pants. *Id.* at 123. When Plaintiff did so, Mr. Green commented that the pants were "[b]etter, but the print is still there." *Id.*

Plaintiff further alleges that his wife overheard "one conversation where Green commented on her husband's penis and its size" and "a conversation where a nurse and a doctor were talking about their newborn daughter and how she loved 'brown' babies" [Doc. No. 44, Pl.'s UMF Nos. 11, 12]. Defendant objects to the second comment asserting that it is irrelevant and cannot be considered as part of the hostile work environment comments. Pursuant to the Court's discussion of the EEOC charge above, these statements may be considered in looking at the overall work environment.

14

The Court, viewing the summary judgment record in the light most favorable to Plaintiff, finds that Plaintiff has alleged minimally sufficient facts establishing triable issues for jury determination on whether his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry*, 155 F.3d at 1261.

Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claim.

## CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment [Doc. No. 40] is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED** this 9th day of March, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge